Houston & Texas Central Railroad Company v. D. C. Fanning.

Decided November 1, 1905.

1.—Master and Servant—Negligence.

Evidence considered and held to support a recovery in favor of a brakeman injured by being thrown from a water car, in returning from the tank, by its collision with the rest of the train, through the negligence of the fireman and the engineer in running too fast and failing to heed his signals to stop and of the conductor in failing to give signals showing position of the rest of the train.

2.—Rules—Application.

A rule for government of trainmen (as that the absence of a signal at a place where it should be expected is to be taken as a signal to stop) can only be effective in circumstances to which it is applicable.

3.—Contributory Negligence—Proximate Cause.

The failure of the injured person to put a light to mark the head of a train on leaving it to go with the engine and a car to a water tank need not be taken as negligence causing his injury by collision with the train in return-

ing, where his evidence showed that he gave the signal to stop at a proper distance from the train and it was not heeded.

**4.—Assignment of Error—Refusal of Instructions.**

Assigning as error the failure of the court's charge to give specific instructions as to the facts which would constitute a defense does not raise the question of error in refusing requested instructions which would have supplied the omission.

**5.—Assumed Risk.**

The doctrine of assumed risk does not apply to risks arising from the master's negligence.

**6.—Double Damages—Diminished Capacity.**

A charge which directs the allowance as damages of compensation for loss of future time during which plaintiff, by reason of his injuries, would be unable to work, and also reasonable compensation for future diminished ability to labor and earn money does not require double damages.

**7.—Rules—Pleading.**

A petition alleging, in general terms, negligence of defendant's engineer and conductor through disregard of the rules, regulations and customs of the railroad for the protection of their fellow employes, was sufficient to authorize the introduction in evidence of rules of the company not specifically pleaded; these were mere matters of evidence not necessary to plead.

**8.—Opinion Evidence—Diminished Capacity.**

Plaintiff was properly permitted to testify that his capacity for earning a livelihood by manual labor was diminished about one-half by reason of his injuries.

Appeal from the District Court of Travis County. Tried below before Hon. George Calhoun.

The eighth section of the court's charge, complained of in the tenth assignment of error as allowing double damages, directed the jury to award compensation, among other things, "for the fair and reasonable value of the services of the plaintiff . . . for such future time (if any) as the plaintiff may be unable to work (if any) on account of such injuries, and for such sum as will fairly and reasonably compensate him for such future diminished ability to earn money (if any) as the jury may believe, etc."

*S. R. Fisher, J. H. Tallichet* and *S. W. Fisher,* for appellant.— The verdict of the jury is contrary to and against both the law and the evidence, the undisputed testimony, that of plaintiff as well as of defendant, showing that, upon the occasion of the accident complained of, plaintiff had violated the rules of defendant requiring him to mark the head end of the train in such wise as that he might know where it was in returning to it, and in failing to place himself on the water car in the position required by the rules, practice and custom of defendant, with which he was familiar, which said acts on his part constituted either an assumption of risk or the want of ordinary care which contributed to or concurred in producing the injuries of which he complains. Assumed risk.—Fort Worth, etc., Ry. Co. v. Gilstrap, 61 S. W. Rep., 351; Texas Cent. Ry. Co. v. Poe, 74 S. W. Rep., 563; San Antonio & A. P. Ry. Co. v. Waller, 65 S. W. Rep., 210; Webb v. Gulf, C. & S. F. Ry. Co., 65 S. W. Rep., 684; Railway Co. v.

Storey, 62 S. W. Rep., 130; Railway Co. v. McCarthy, 64 Texas, 632; Bonnet v. Railway Co., 89 Texas, 72; Railway Co. v. Bradford, 66 Texas, 732; Railway Co. v. Drew, 59 Texas, 10; Railway Co. v. Lempe, 59 Texas, 19; Williams v. Railway Co., 116 N. Y., 628; Lovejoy v. Railway, 125 Mass., 79; Quill v. Huston & T. C. Ry. Co., 93 Texas, 616; Missouri Pac. Ry. Co. v. Somers, 71 Texas, 700; Missouri Pac. Ry. Co. v. Somers, 78 Texas, 439; Green v. Cross & Eddy, 79 Texas, 130; Texas & P. Ry. Co. v. French, 86 Texas, 96; Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 75; Bradford v. Railway Co., 66 Texas, 732.

The defendant had the right to have the matters of defense set up by it fully and fairly presented to the jury, and the charge of the court nowhere grouping the facts which, if found to be true, would have entitled the defendant to a verdict, it was the duty of the court to supplement its charge by giving said special instructions, or some of them, which grouped the facts upon which defendant based its defense and would have correctly advised the jury on the law with reference thereto. City of Dallas v. Jones, 93 Texas, 44; Citizens Ry. Co. v. Ford, 60 S. W. Rep., 680; Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635, 638, 639; Dublin Cotton Oil Co. v. Jarrard, 91 Texas, 290, 293; Houston & T. C. Ry. Co. v. Patterson, 48 S. W. Rep., 747; Railway Co. v. Shieder, 88 Texas, 166.

It is the duty of the court, when there is any evidence tending to support an issue raised by the pleadings, to submit said issue in its charge to the jury, or where it has failed to do so and a special instruction is asked presenting such issue, to give the same in charge, and a failure to so charge or to give such special instruction is reversible error. Southern, etc., Ry. Co. v. Sage, 11 Texas Ct. Rep., 977; Missouri, K. & T. Ry. Co. v. Renfro, 11 Texas Ct. Rep., 314, Houston & T. C. Ry. Co. v. Jones, 11 Texas Ct. Rep., 315; Freeman v. Carter, 10 Texas Ct. Rep., 497; Heatherly v. Little, 40 S. W. Rep., 445; Smithwick v. Andrews, 24 Texas, 495; Barclay v. Tarrant Co., 53 Texas, 256, 257; Houston & T. C. Ry. Co. v. Adams, 63 Texas, 206; Texas & P. Ry. Co. v. Scott, 64 Texas, 551; Leach v. Wilson Co., 68 Texas, 355; Wegner v. Biering, 73 Texas, 191; East Line, etc., Ry. Co. v. Smith, 65 Texas, 171; Diamond Mill Co. v. Groesbeck Nat. Bank, 29 S. W. Rep., 169; Houston & T. C. Ry. Co. v. Stewart, 37 S. W. Rep., 770; McCarthy v. Houston & T. C. Ry. Co., 54 S. W. Rep., 421; Missouri, etc., Ry. Co. v. Wylie, 33 S. W. Rep., 772; Missouri, K. & T. Ry. Co. v. McGlamory, 35 S. W. Rep., 1058.

The court erred in the eighth paragraph of its charge on the law of the case, because the same authorizes and requires the jury to award plaintiff double damages. International & G. N. R. R. Co. v. Butcher, 84 S. W. Rep. (Sup. Ct.), 1052, presenting the exact question here involved and condemning the charge given; Missouri, etc., Ry. Co. v. Hannig, 91 Texas, 350; Texas Brewing Co. v. Dickey, 49 S. W. Rep., 935; St. Louis, etc., Ry. Co. v. Smith, 63 S. W. Rep., 1064-1067; see also Railway Co. v. Brock (Sup. Ct.), 31 S. W. Rep., 500, and Railway Co. v. Porfert, 72 Texas, 344.

The court erred in permitting the plaintiff to read in evidence rules 105, 307, 430 and 431 of the Houston & Texas Central Railroad Com-

pany because the petition contained no allegation that said rules were in existence at the time of plaintiff's accident. Denison v. League, 16 Texas, 408; Mims v. Mitchell, 1 Texas, 443; Loving v. Dixon, 56 Texas, 79; Laredo v. Russell, 56 Texas, 403; Edrington v. Newland, 57 Texas, 632; Burnett v. Harrington, 58 Texas, 363; Thurmond v. Brownson, 69 Texas, 559; Cooper v. Loughlin, 75 Texas, 527; Weaver v. Vandervanter, 84 Texas, 693, 19 S. W. Rep., 889; Hoffman v. Cleburne Bldg., etc., Assn., 85 Texas, 414, 22 S. W. Rep., 155; Osborne v. Barnett, 1 Texas Civ. Cases, White & W., 51; Rogers v. Harrison, 1 Texas Civ. Cases, White & W., 224; McArnis v. McIntyre, 1 Texas Civ. Cases, White & W., 225; Smith v. McGhee, 1 Texas Civ. Cases, White & W., 528; Walker v. Simkins, 2 Texas Civ. Cases, Willson, 59; Missouri Pac. Ry. Co. v. Teague, 2 Texas Civ. Cases, Willson, 285; Dolores Land, etc., Co. v. Jones, 3 Texas Civ. Cases, Willson, 330; Robinson v. Moore, 1 Texas Civ. App., 98; Galveston, etc., Ry. Co. v. Scott, 18 Texas Civ. App., 325, 592.

The court erred in permitting plaintiff, over the objection, protest and exception of defendant seasonably interposed, to state that his capacity to labor has been, is and will be diminished at least one-half by reason of the injuries of which he complains, said testimony being the mere conclusion or opinion of the witness. Gulf, C. & S. F. Ry. Co. v. Wright, 1 Texas Civ. App., 402; Carter v. State, 23 Texas, 336-340; Gulf, C. & S. F. Ry. Co. v. Dunman, 16 S. W. Rep., 421; International & G. N. Ry. Co. v. Kuehn, 2 Texas Civ. App., 210; Turner v. Strange, 56 Texas, 143; Kauffman v. Babcock, 67 Texas, 245; Shelley v. Austin, 74 Texas, 608; Haynie v. Baylor, 18 Texas, 509; Half v. Curtis, 68 Texas, 640; Rash v. State, 61 Ala., 89.

*James & Yeiser,* for appellee.—The violation of the rules of a railroad company by one of its employes does not give rise to the doctrine of assumed risk. Quinn v. Galveston, H. & S. A. Ry. Co., 11 Texas Ct. Rep., 820.

On specification of error in assignment: Railway Co. v. McWeigh, 10 Texas Ct. Rep., 645; Hall v. H. & M. Co., 23 Texas Civ. App., 156; Barrett v. Telephone Co., 65 S. W. Rep., 1128; Krugel v. Berry, 75 Texas, 232; Mitchell v. Mitchell, 84 Texas, 307.

Double damages: Knittel v. Schmidt, 16 Texas Civ. App., 7.

Testimony of an injured party that the extent of his injury in the way of ability to work was diminished more than one-half, was admissible over objection that it was the opinion of the witness. Texas & P. R. R. Co. v. Watts, 10 Texas Ct. Rep., 419.

FISHER, CHIEF JUSTICE.—This is a suit by Fanning against the railroad company for damages for personal injuries alleged to have been sustained by him when employed as a brakeman by defendant. Verdict and judgment resulted in his favor for $2,500.

The acts of negligence alleged and relied on by the plaintiff are to the effect that the engineer operating the train upon which the plaintiff was employed as a head brakeman backed the engine and a water car coupled thereto, on which the plaintiff was standing when in the

performance of his duty as a brakeman, back to and against the train
from which the water car and engine had been uncoupled at a high,
dangerous and reckless rate of speed, at the time failing to keep a
proper lookout for the train and the signals from the plaintiff, and
failed to see and observe the signals given by the plaintiff to slow
up and stop on account of the approach of the engine and water car
to the train, thereby causing the engine and water car to collide with
the head end of the train, throwing the plaintiff to the ground and
causing the injuries he sustained. Also that the conductor and engineer
of the train failed to place, as they were required to do, anyone at the
head end of the train to which said water car and engine had been
attached, to display signals to the engineer and to the plaintiff; and
that the other brakeman on the train failed to station himself at the
head end of the train to display signals and mark the position of the
head end of the train, and thereby said collision was caused, injuring
the plaintiff.

The answer interposed a general demurrer and general denial and
special plea as follows:

"Further answering said petition, defendant says that under and by
virtue of the general rules and customs of defendant, and in accordance
with the general practice and custom of railroad companies and rail-
road employes engaged in the train service in general and in conformity
with the correct and proper practice in railroading, all of which was
known to plaintiff, and with all of which plaintiff was charged with
notice, plaintiff D. C. Fanning was in charge of the engine and the
water car coupled thereto, or if not in charge thereof, was equally
responsible with the engineer operating said engine in all matters per-
taining to the rate of speed with which said engine was operated in
backing up to couple onto the train; that it was necessary that the
watercar coupled to said engine and tender should be filled, then it
was proper and necessary for plaintiff to accompany the same to the
tank at Gabriel river, and that the plaintiff was also bound to accom-
pany said engine and water car and to ride on said water car in re-
turning from said tank to the train; that plaintiff was bound and re-
quired to know where he had left said train and to regulate the speed
with which the engineer approached said train and to direct said en-
gineer by proper signals to approach said train at a safe speed and in
a proper manner; that it was not proper nor required that the rear
brakeman on said train or the conductor thereof should go or station
himself or themselves at the head of said train, or to mark the same
with signals, but that plaintiff was in charge of said head end of
said train and was bound to know where he had left the same or to
mark the same in such manner that he would know where said head
end was in returning thereto.

"Further answering said petition defendant says that, under and by
virtue of the printed rules and regulations of the Houston & Texas
Central Railroad Company, with a copy of which rules plaintiff had
been furnished and which he was required to be conversant with and
to obey, plaintiff knew and was charged with notice of the following
rules and regulations for the government of the conduct of train men
and other employes which he was bound to obey.

"Rule 27. A signal imperfectly displayed or the absence of a signal at a place where a signal is usually shown, must be regarded as a stop signal and the fact reported to the superintendent.

"Rule 102. When cars are pushed by an engine (except when shifting and making up trains in yards) a flagman must take a conspicuous position on the front of the leading car and signal the engineman in case of need.

"Rule 106. In all cases of doubt or uncertainty the safe course must be taken and no risks run.

"Further answering said petition defendant says that by reason of the facts set out in paragraph two hereof, plaintiff assumed the risk of all danger and injury which was caused by the absence of a light or other signal or of other trainmen at the head end of said train and that he can not recover any damages for injuries caused by the absence of such light, signal or trainmen at such place.

"Further answering said petition, defendant says that, under and by virtue of the facts set out in the second paragraph of this answer, plaintiff had charge and control of the engine and water car coupled thereto, and in particular was responsible for the rate of speed and manner in which said engine and water car reapproached the head end of said train, and that plaintiff was bound to know where he had left the head end of said train, and to approach the same in a proper and safe manner, but that he wholly failed and refused to regulate the speed of said engine, or to signal the engineer to slow down or to advise the engineer of their approach to the head end of said train, and he wholly failed and refused to take proper precautions to advise himself and to know where he had left the head end of said train, and thereby, by his own negligence in said particulars, directly and proximately contributed to causing whatever injuries he has sustained.

"Further answering said petition defendant says that, under and by virtue of Rule 27 hereinbefore set forth, it was the duty of plaintiff to immediately stop said engine and water car and to give stop signals to the engineer in the event that there was no signal at a place where a signal is usually shown or where he expected to find a signal, and that if plaintiff expected to find a signal at the head end of said train and did not find it, as alleged by him, then he can not recover herein because he, by his own negligence in violating said rule, directly and proximately contributed to whatever, if any, injuries he may have sustained.

"Further answering said petition, defendant says that, under and by virtue of rule 102, hereinbefore set forth, it was the duty of plaintiff, in backing up on said water car, to station himself in a conspicuous position on the front end of said water car in the direction in which it was moving, and to signal the engineer in case of need, but that he wholly failed and refused to take such position or keep a proper lookout, or to signal said engineer until it was too late to avert the accident, and that he thereby directly and proximately caused and contributed to causing whatever, if any, injuries he has sustained.

"Further answering said petition defendant says that, under and by virtue of Rule 106, hereinbefore set forth, it was the duty of plaintiff, in case of doubt or uncertainty, to take a safe course and run no risks,

and that when plaintiff in reapproaching the head end of said train failed to discover the same at or about the place where he expected to find it, it was his duty to take said safe course and run no risks and thereupon to stop said engine or signal the engineer thereof to stop the same until he had located the head end of said train, but that plaintiff carelessly and negligently failed and refused so to do, and thereby directly and proximately caused and contributed to causing whatever, if any, injuries he has sustained."

In response to these averments, plaintiff by supplemental petition substantially alleged that he did not assume the risk of the negligence of appellant's servants and was not guilty of contributory negligence, as alleged, and that he was in the exercise of ordinary care in the discharge and performance of his duties under the orders of the engineer, whose signals and orders it was the duty of plaintiff to obey, and while so acting in the discharge of his duties, and relying on the engineer and the conductor and the brakeman on said train to exercise ordinary care to protect him from injuries, the plaintiff was injured as alleged in his original petition by reason of the negligence charged; that he never assumed the risk of the negligence of his coemployes, but that he has always relied on the other employes to protect him from injuries while in the discharge of his duties by using ordinary care on their part to prevent him from being injured; that he had relied upon his coemployes to obey the rules and regulations and custom of the railroad company to protect their fellow employes from injury; and that at the time of and immediately prior to the injury, he relied upon the conductor, engineer and brakeman to exercise ordinary care for his protection.

The verdict of the jury may be justified upon the ground that the evidence in the record is sufficient to establish the acts of negligence alleged by plaintiff in his petition. It appears from the evidence that the plaintiff was what was known as the head brakeman on a freight train in the employment of the railroad company, that the train was under the control and charge of a conductor and engineer. A mile or so east of the water tank located on the Gabriel River, it was the custom and habit of the employes in charge of the freight train going east to stop the train and uncouple the engine and water car, and go to the water tank on the Gabriel River in order to supply the engine and water car with water. It was the duty of the plaintiff as head brakeman, when the point was reached when it was necessary to uncouple the water car and engine from the main train, to uncouple the same and get upon the water car and go to the water tank, to aid and assist in replenishing the engine and car with water, and to perform his duty as a brakeman and watchman on the water car going to the water tank and returning to the train; and there is some evidence to the effect that while in the discharge of this duty he was under the control of the engineer. On the occasion in question, the engine and water car were uncoupled from the train, went down to the water tank, and upon its return, plaintiff stationed himself on the water car at the proper place, where the jury had the right, in view of his evidence, to consider he should be. That the engineer in backing the engine and water car to the train in order to connect with the

same, caused the engine to be propelled at a high rate of speed, about 15 miles an hour, and approached the main train at this rate of speed, and collided with the same, causing a collision which threw the plaintiff from the car, from which he sustained injuries that justified the amount of the verdict found by the jury.

It appears from the evidence that there was left with the main train, when the engine and water car were cut loose, a conductor and brakeman, neither of whom was stationed at the head end of the train upon the return and approach of the engine with the water car, nor was there any light displayed at that place. The accident occurred during the night, and the plaintiff when stationed in his position on the water car, had a lantern which the engineer or fireman could see when properly displayed by the plaintiff, if they had kept a proper lookout. It was the duty of the plaintiff to remain in position on the car so that he could signal the engineer or fireman of the near approach to the train. He assumed such position and did, with his lantern give signals when in about 200 yards of the train, and which was on the side occupied by the fireman, who was then in his usual position in the cab of the engine; and upon this point the evidence justifies the conclusion that if the fireman had kept a proper lookout, he could have seen the signals given by the plaintiff to slow up or stop, or that he saw the signals and disregarded the same and failed to communicate the same to the engineer. It was the duty of the fireman, on seeing the signals, to communicate the same to the engineer, in order that the engine might be stopped in time to prevent a collision. If the signals of the plaintiff had been observed, the jury were authorized to draw the conclusion that the engineer could and would have stopped his engine in time to have prevented a collision.

There is evidence also of a nature that would justify the conclusion that it was the duty of the brakeman or conductor remaining with the train to have been in position to signal to the plaintiff or the engineer and the fireman their approach to the main train. We also find that the negligence stated was the cause of plaintiff's injuries.

Appellant's first assignment of error is as follows "The court erred in refusing to give special instruction No. 1, asked by defendant, because the uncontroverted evidence showed that plaintiff knew of the rules, practice and custom of defendant in regard to the particular service he undertook to perform and further showed that upon the occasion referred to, he had violated said rules, which violation contributed to or concurred in causing or producing the accident, irrespective of any question of negligence on the part of defendant, its agents or servants." The special instruction referred to by this assignment is a peremptory charge in favor of the appellant, which the court refused.

The second assignment is to the effect that the verdict of the jury is contrary to and against both the law and the evidence, the undisputed testimony, that of plaintiff as well as of defendant, showing that upon the occasion of the accident complained of, plaintiff had violated the rules of defendant requiring him to mark the head end of the train in such wise as that he might know where it was in returning to it, and in failing to place himself on the water car in the position

required by the rules, practice and custom of defendant, with which he was familiar, which said acts on his part constituted either an assumption of risk or the want of ordinary care which contributed to or concurred in producing the injuries of which he complained."

Rule 27, one of those pleaded by the appellant, and which is to some extent relied upon, should not be considered in connection with the facts of this case, because it appears from the evidence of the appellant's witness Nass, who was familiar with the rules, that it was not intended that that rule should apply to the circumstances of this case. That leaves remaining Rules 102 and 106, which were pleaded by defendant, and which it is claimed were violated. Rule 102 is to the effect that when cars are pushed by an engine a flagman must take a conspicuous position on the end of the car and signal the engineman in case of need. 106 is "in all cases of doubt or uncertainty the safe course must be taken and no risks run." There is evidence of the plaintiff to the effect which authorized the jury to conclude that upon the return of the engine and water car to the main train, the plaintiff stationed himself at the proper place on the water car, in order to give the signals required; and according to his evidence, he did give these signals at a time and place when, if the train had been going at a reasonable rate of speed, it could have been stopped before the collision occurred; and even the conclusion would be justified, in view of the fact, that going at the rate of speed it was actually traveling, it could have been stopped within the 200 yards, if the engineer and fireman had observed the signals given by the plaintiff. If it could be assumed that it was the duty of the plaintiff (which question was one to be passed upon by the jury) to place proper marks or lights at the end of the main train before he left the same to go with the water car, still, the jury had the right to conclude that the failure to perform that duty was not such an act of contributory negligence as would, in view of all the evidence in the record, preclude the plaintiff from recovering; for it appears from the plaintiff's own testimony that when he got within about 200 yards of the train, he realized the fact that the engine was approaching the same, and he gave the signals which he was required to give, and which if they had been observed, would have prevented the collision.

Furthermore, there is testimony coming from the plaintiff, to the effect that it was the duty of the conductor or brakeman remaining with the train to signal the approaching engine, so that the plaintiff upon the water car and the engineer and fireman could know when the train was being approached. If the jury had the right to consider these matters, and the exercise of diligence upon the part of the plaintiff in signalling to the engineer and fireman, how could it be said that his failure to place the light or mark on the front end of the train would be the necessary cause that contributed to his injuries? If it was the duty of the conductor and the other brakeman to perform that duty, why should not the plaintiff and the engineer and the fireman rely upon the fact that that duty would be performed? And if, as a fact, the plaintiff did give all the signals that were required or were proper under the circumstances, and the fireman and engineer failed to observe them, when they could and should have observed them,

why should it be said that the failure to mark the head end of the train was the cause of the accident?

The third assignment of error complains generally of the charge of the court in failing to more specifically advise the jury as to the facts and circumstances that would justify a verdict in favor of the appellant. The main charge of the court, together with those given at the request of the appellant, is substantially correct. If the appellant desired a more full instruction in submitting the issues and detailing the facts and circumstances that would justify a verdict in its favor, the request should have been made. It is true that the concluding part of this assignment does state that all these matters were called to the attention of the court by special charges 3, 4 and 6, but we do not regard this as an assignment of error complaining of the refusal of the court to submit these charges.

The fourth assignment of error is as follows: "The court erred in not presenting to the jury the issue of assumption of risk on the part of plaintiff, defendant having plead assumption of risk and the facts constituting the same, and there being abundant testimony authorizing the submission of the same to the jury, which said omission in the charge of the court was distinctly called to his attention by special instructions Nos. 2, 6 and 7, requested by defendant and refused by the court, which correctly advised the jury as to these matters."

It is stated that this assignment is submitted as a proposition. Under a statement contained in the brief is what is termed a second proposition to this effect: It is the duty of the court when there is any evidence tending to support an issue raised by the pleadings to submit said issue in its charge to the jury, or where it has failed to do so and a special instruction is asked presenting such issue, to give the same in charge, and a failure to so charge, or to give such special instruction, is reversible error.

This assignment of error is really nothing more than a complaint of the action of the court in not presenting the issue of assumed risk; that is what is complained of, and the error stated is predicated upon such omission. There is no error assigned on the refusal of the court to give charges 2, 6 and 7. The assignment states that the question of assumed risk was called to the attention of the court by these charges, but it does not state in the assignment that the court erred in refusing these charges. Furthermore, in this connection, special charge No. 2 which was refused, in view of the facts is clearly erroneous. The evidence of the witness of appellant who was familiar with the rules, states that Rule No. 27, to which charge No. 2 relates, did not apply to the circumstances of this case. Furthermore, the doctrine of assumed risk, as broadly stated in the remaining charges which were refused, was not proper to be submitted. If the element of negligence which is charged by the plaintiff against the appellant exists in the case, the doctrine of assumed risk would have no application. (Quinn v. Galveston, H. & S. A. Ry. Co., 11 Texas Ct. Rep., 820.)

The fifth, sixth, seventh and ninth assignments of error, all of which are grouped, as presented are too general to be considered and do not comply with the rules.

The tenth assignment complains of the charge of the court on the

measure of damages, on the ground that it authorized a double recovery. The charge as we construe it is not subject to this objection. (Knittel v. Schmidt, 16 Texas Civ. App., 7.)

The eleventh assignment complains of the action of the trial court in permitting plaintiff to offer in evidence Rules Nos. 105, 106, 430, 431, 307, 102 and 27. The ground of objection is that these rules were not alleged, and that there is no averment in plaintiff's petition tending to show that they had any connection with this case. These rules relate to the conduct of conductors and engineers with reference to the safety of their trains, and the precautions for their protection and with reference to coupling and signals and the movement of trains, and the duty of engineers in starting and moving their trains, in what direction they shall look, and the measures they shall adopt for the safety of trains and employes.

Paragraph 6 of the supplemental petition, in effect, alleges that it was the duty of those in charge of the train to use ordinary care to prevent the plaintiff from being injured, and it was their duty to obey the rules and regulations and customs of the railroad to protect their fellow employes from injury. Upon this and as to what were the relative and respective duties of the parties, was a matter of evidence. The plaintiff pleaded the negligence of the conductor and of the engineer; in other words, those in charge of the train, and he by his supplemental petition alleged that according to the rules and customs, they rested under the duty to exercise ordinary care for his safety. Plaintiff was not required to plead his evidence by which he expected to establish this fact, but it was proper to show by rule or custom what was the duty of the engineer and the conductor and those generally in charge of the train.

The twelfth assignment of error raises an objection to the action of the trial court in permitting the plaintiff Fanning to testify how much, in his opinion, his capacity for earning a livelihood by manual labor had been depreciated by reason of his injuries, and he testified about one-half. The objection urged to this is that it called for the conclusion or opinion of the witness. The admissibility of this testimony is settled by the case of Texas & Pacific Railway Co. v. Watts, 10 Texas Ct. Rep., 419; where a question almost identical was asked, and the answer held admissible.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.